UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARD BROOKS,

        Plaintiff,

Case No. 1:11-cv-1060

Hon. Robert J. Jonker

v.

CONNIE LONGCORE and
DEBBIE LAWRENCE,

        Defendants.
                              /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner. This matter is now before the court on defendants' motion for summary judgment (docket no. 9).

**I.**    **Plaintiff's claims**

Plaintiff[1] has set forth the following allegations in his complaint. At all times relevant to the complaint, defendant Constance Longcore was the food service supervisor at the Lakeland Correctional Facility (LCF), defendant Debbie Lawrence was the assistant food service supervisor and Longcore's immediate supervisor at LCF, and plaintiff was employed at the food service department at LCF. Compl. at ¶¶ 7-8, 13, 28. On February 10, 2011, Longcore directed plaintiff to push the "A-Unit's heavy metal food carts" to A-Unit Building. *Id.* at ¶ 9. Plaintiff, who was employed as the food service clerk, told Longcore he could not push the cart because he had "serious medical conditions" consisting of a torn ACL in his right knee. *Id.* This was the first time plaintiff was required to push carts and the first time he explained his medical condition to

---

[1] The court notes that plaintiff refers to himself as Jamarrow Brooks.

Longcore. *Id.* On February 17, 2011, Longcore gave plaintiff a direct order to push a cart to A-Unit Building. *Id.* at ¶ 10. Plaintiff warned Longcore that he would not be able to push the cart due to his serious medical condition, but he complied with the order. *Id.* at ¶ 11. At this time, there were five other food service workers assigned to push carts and available to do this job. *Id.* at ¶ 13. Plaintiff experienced excruciating pain and medical problems after he complied with Longcore's orders to push the carts. *Id.* at ¶ 15. Plaintiff attempted to resolve the matter with Longcore, but she refused to discuss it. *Id.*

Plaintiff filed a grievance against Longcore on February 21, 2011, claiming "Inhumane Treatment, Deliberate Indifference to a serious medical need in violation of the United States Constitution, Eighth Amendment and Due Process Violation of the Fourteen[th] Amendment of the United States Constitution, [and] Substantive and Procedural Due Process violations." *Id.* at ¶¶ 16-17.

On March 11, 2011, Lawrence and non-party Food Service Director J. Kevin O'Brien responded to the Step I grievance. *Id.* at ¶ 19. The grievance was denied after finding: that plaintiff had a special accommodations notice (SAN) dated January 22, 2007, for a knee brace for 24-hour use; that nothing in the SAN placed limitations on plaintiff's physical activities; that Health Services was contacted and found no documentation in plaintiff's file which would prohibit him from pushing or pulling heavy food service carts; that plaintiff's knee brace was discontinued on September 3, 2010; and that Health Services would review plaintiff's file. *Id.* When meeting with plaintiff about the grievance, Lawrence allegedly "warned" plaintiff that the grievance was "not good" and "that it would probably go easier on [plaintiff] if he just signed off and left the grievance alone." *Id.* at ¶ 21. The grievance was denied at Step III on or about May 2, 2011. *Id.* at ¶¶ 22-25.

Plaintiff has been in great pain with added medical problems since Longcore "forced" him to push and pull the food carts, seeking medical attention on several dates: February 17, 2011; March 16, 2011; April 17, 2011; May 5, 2011; and August 12, 2011. *Id.* at ¶ 27. Plaintiff alleged that a new SAN regarding the knee brace was sent on March 18, 2011. *Id.* at ¶ 45.

On June 3, 2011, Lawrence placed plaintiff on a new job assignment as a lead line worker, a job assignment which plaintiff characterized as a "less desirable position" than that of food service clerk. *Id.* at ¶ 28. Plaintiff spoke with Food Service Director O'Brien on June 6th regarding his "improper removal" as food service clerk to lead line worker, and that his re-assignment "smacks of retaliation" for the previous grievance filed against Longcore. *Id.* at ¶¶ 29-30. Plaintiff alleged that he worked for several years as the food service clerk and had very good work evaluations. *Id.* at ¶ 30. There was no "true justification" for his downgrade from the clerk position. *Id.* at ¶ 70. According to plaintiff, the food service clerk position involved 7.5 hours of work per day, wages of $4.53 per day, and a monthly pay of $99.66, while the lead line worker position involved 7.0 hours of work per day, wages of $4.23 per day, and monthly wages of $88.83. *Id.* at ¶ 30. Plaintiff grieved the retaliation claim through Step III. *Id.* at ¶¶ 32-39.

Plaintiff has alleged three claims against defendants. The first claim, based on the Eighth and Fourteenth Amendments, alleged that Longcore and her supervisor Lawrence were deliberately indifferent to his serious medical needs and failed to protect plaintiff from suffering serious physical and emotional injury which resulted to plaintiff when he pushed the food carts. *Id.* at ¶¶ 50-60. The second claim, based on the First Amendment, alleged that Longcore and Lawrence retaliated against plaintiff, because they changed his work assignment from food service clerk to lead line worker. *Id.* at ¶¶ 61-69. The third claim, based on state law tort theories, alleged that

Longcore and Lawrence engaged in "gross negligence, failing to protect plaintiff's statutory rights to be free from gross negligence, using falsified information, as to health records and work assignment reports within the [MDOC] and conspiring to cover up retaliation for Plaintiff seeking redress of his formal grievances." *Id.* at ¶¶ 70-74. Plaintiff has characterized his tort theory as involving "novel and/or complex issue(s) of state law." *Id.* at ¶ 73.

Plaintiff seeks a wide array of relief which includes: a declaratory ruling that defendants engaged in various wrongdoing; several forms of injunctive relief, such as providing plaintiff with physical therapy and surgery by an outside doctor and ordering defendants not to engage in any action "that may be perceived as retaliatory in nature and manner" (e.g., losing his job, denial of work performance bonus, or transfer); other relief including lost pay and reinstatement as food service clerk with his normal bonus; compensatory damages of $400,000.00; damages on the state tort claims of $10,000; and punitive damages in the amount of $100,000.00. *Id.* at pp. 20-22.

## II. Defendants' motion for summary judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.     Plaintiff's submissions

### 1.     Plaintiff's verified complaint

To create a genuine issue of fact for purposes of a motion for summary judgment, a party's affidavit or declaration must be based upon personal knowledge . *See* Fed. Rules Civ. Proc. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

5

declaration is competent to testify on the matters stated"). For purposes of responding to a motion a motion for summary judgment, a verified complaint has the same force and effect as an affidavit. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Here, plaintiff attempted to create a verified complaint as allowed under 28 U.S.C. § 1746 by including a "declaration / verification" on the last page of the pleading. Section 1746 provides in pertinent part that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.

Plaintiff, however, did not follow the prescribed form, stating:

> Pursuant to 28 U.S.C. § 1746, I, Plaintiff Jamarrow Brooks declare and verify under the penalty of perjury that the foregoing is true and correct to the Best of His Knowledge, Information and Belief contained herein in this civil rights complaint, exhibits, affidavits, etc.

Compl. at pp. 22-23.

Plaintiff's verification did not certify that his statements were "true and correct." Rather, he diluted the statutory language by stating that his statements were true "to the best of his knowledge, information and belief." Because plaintiff did not differentiate between allegations based upon his personal knowledge and allegations based upon his information and belief, the

6

complaint is not verified under 28 U.S.C. § 1746.  *See Tenneco Automotive Operating Company, Inc. v. Kingdom Auto Parts*, 410 Fed. Appx. 841, 848 (6th Cir. 2010) (trial court could refuse to consider witness' declarations that did not specify which statements were made under information and belief and which were made from personal knowledge).

   **2.   Plaintiff's affidavit**

Plaintiff also filed an affidavit with his complaint.  *See* Brooks Affidavit (docket no. 1-3 at pp. 7-11).  However, this affidavit is not based on plaintiff's personal knowledge.  Rather, the affidavit is based on information that is true to the best of plaintiff's "knowledge, information and belief."  *Id.*   Such an affidavit is not sufficient to an issue of fact under Fed. Rules Civ. Proc. 56(c)(4).  *See Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (the "personal knowledge requirement [of Rule 56] prevents statements in affidavits that are based, in part, 'upon information and belief' - instead of only knowledge - from raising genuine issues of fact sufficient to defeat summary judgment");  *Wuliger v. Eberle*, 414 F.Supp.2d 814, 818 (N.D.Ohio 2006) (" It is axiomatic that affidavit evidence must be based upon personal knowledge.  *See* 11 James Wm. Moore, Moore's Federal Practice, § 56.14[1][c] (3d ed.2005). Information averred to the best of the affiant's knowledge or belief is insufficient to meet the requirements under Rule 56(e) [the predecessor to Fed. Rules Civ. Proc. 56(c)(4)]").

Furthermore, plaintiff did not swear to this affidavit before a notary public.  The notary struck the word "sworn" from the notary jurat, which simply reads "Subscribed to before me this 28th day of September, 2011."  Brooks Affidavit (docket no. 1-3 at p. 11).  *See* M.C.L. § 55.265(a) (defining a "jurat" as "a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in

the presence of the notary public a voluntary signature and *taken an oath or affirmation vouching for the truthfulness of the signed record*") (emphasis added). The absence of a jurat or other evidence of verification requires a court to find that the document fails to constitute an affidavit. *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). *See Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930) ("[a] purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all"); *People to Use of Esper v. Burns*, 161 Mich. 169, 173, 125 N.W. 740 (1910) ("[a]n affidavit has been defined to be a declaration on oath, in writing, sworn to by a party before and attested by some person who has authority to administer oaths").

### 3. Plaintiff's verified response and declaration

Plaintiff also filed a verified response brief to defendants' motion for summary judgment under § 1746. *See* Response (docket nos. 21 and 22). While plaintiff included the appropriate verification language under § 1746, the court does not consider plaintiff's brief - which consists almost entirely of legal arguments and citations to case law - to be a "declaration" sufficient to create an issue of fact for purposes of a summary judgment motion. *See* Fed. Rules Civ. Proc. 56(c)(4). However, plaintiff has also filed a separate declaration opposing defendants' motion for summary judgment. *See* Declaration (docket no. 22-2 at pp. 2-6). This declaration is properly verified under § 1746 and meets the requirements of Fed. R. Civ. P. 56(c)(4).

### 4. The McClellan affidavit

Finally, the court will not consider the affidavit of Reginald McClellan (docket no. 22-2 at pp. 8-9), which is signed by the affiant but not notarized. Such a document is not an

"affidavit" under state law. *See* M.C.L. § 55.265(a); *Kelley*, 251 Mich. at 696; *People to Use of Esper*, 161 Mich. at 173; *Knobloch*, 2002 WL 1360388 at *2.

### C. Discussion

#### 1. Deliberate indifference claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). "If prison officials knowingly put [a prisoner] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to

treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The conduct for which Eighth Amendment liability attaches must be more than negligence, "it must demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (internal citation omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).[2]

---

[2] The court views plaintiff's claim that defendants failed to protect him from suffering an injury as subsumed within the Eight Amendment deliberate indifference claim. The court also construes plaintiff's substantive due process claim as brought under the Eighth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

### a. Defendant Lawrence

As an initial matter, there are no facts which support an Eighth Amendment claim against Lawrence. Lawrence's only involvement in plaintiff's dispute regarding his working conditions, i.e., pushing the cart, was as a respondent to plaintiff's grievance against Longcore. *See* Grievance Response (docket no.10-3 at p. 8); Compl. at ¶ 19. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Accordingly, Lawrence is entitled to summary judgment with respect to plaintiff's Eighth Amendment claim.

### b. Defendant Longcore

Defendant Longcore contends that plaintiff's claim fails on the subjective requirement, because she were not aware of his knee condition. In her affidavit, Longcore states that "[at] no time did prisoner Brooks ever make me aware nor did he ever make any statement to me verbally or in writing that he had any physical limitations regarding his ability to perform the task that was assigned to him." Longcore Aff. at ¶ 4 (docket no. 10-2). On the other hand, plaintiff states that he told Longcore about his medical limitations and the SAN on February 10 and 17, 2010. Plaintiff's Decl. at ¶¶ 4 and 7 (docket no. 22-2 at pp. 2-6). In this regard, plaintiff has provided a copy of the January 22, 2007 SAN for a knee brace (for 24 hour use) and letter from the Office of Legislative Corrections Ombudsman dated July 18, 2011, which states that plaintiff's permanent

11

accommodation for a knee brace issued in January 2007 was never revoked, but may have been omitted when the MDOC updated its records to an electronic system. *See* SAN (docket no. 22-2 at p. 11); Letter (July 18, 2011) (docket no. 1-2 at p. 19). Viewing the evidence in the light most favorable to plaintiff, genuine issues of material fact exist with respect to whether Longcore was aware of plaintiff's medical limitations when she ordered him to push the food carts.[3]

---

[3] Defendants also contend (without citing any authority) that plaintiff's status as a food service worker precluded him from raising an Eighth Amendment claim related to that position:

> It is important to note that this is not a situation where Plaintiff was forced against his will into unlawful conditions of confinement. Employment in Food Service is a privilege, not a right or requirement. Neither of the defendants forced Plaintiff to continue working a job that aggravated his knee. He could have quit at any time. In short, the factual circumstances of this case do not rise to the high level of cruel and unusual punishment under the Eighth Amendment.

Defendants' Brief at p. 7. This is an incomplete, if not erroneous, statement regarding the Eighth Amendment's application to prison work assignments. It is well established that a prisoner has no constitutional right to prison employment or to a particular prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Dobbins v. Craycraft*, 423 Fed. Appx. 550, 552 (6th Cir. 2011). Nor does a prisoner have a right to employment under Michigan law, which gives prison administrators complete discretion regarding prisoner work assignments. *Dobbins*, 423 Fed. Appx. at 552. *See* Policy Directive 05.01.100 ¶ O (eff. 5/30/11) ("[a]ll employable prisoners shall be classified to a work assignment unless assigned to school"). In addition, prisoners are not considered "employees." *See* Policy Directive 05.02.110 ¶ A (eff. 2/25/08) ("Prisoners assigned to work are not employees of the Department and therefore are not eligible to receive workers' compensation or unemployment compensation benefits for their work assignments."). Under these circumstances, courts have held that "[p]rison work assignments are conditions of confinement subject to scrutiny under the Eighth Amendment." *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993); *Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010) (same); *Terrill v. Bertussi*, No. 2:05-cdv-96, 2005 WL 3277990 at *3-*5 (W.D. Mich. Dec. 2, 2005) (same); *Lee v. Sikes*, 870 F. Supp. 1096, 1099-1101 (S.D. Ga. 1994) (same). Eighth Amendment claims arising solely from prison work assignments are typically limited to extreme working conditions where the prison staff is not merely negligent. *See, e.g., Jones v. Campbell*, 25 Fed. Appx. 287, 288 (6th Cir. 2001) (rejecting prisoner plaintiff's Eighth Amendment claim for injuries suffered while working at a recycling center because defendants were at most negligent for creating the dangerous work conditions, and a prisoner "cannot base an Eighth Amendment claim on mere negligence"); *Tino v. Jones*, No. 84-6107, 1986 WL 16250 (6th Cir. April 2, 1986) (after observing that "[i]t is true that, under certain extreme conditions, prison work assignments may constitute cruel and unusual punishment," the court found that the prisoners failed to state an Eighth Amendment claim where they were required to work seven to ten hours per day for six days per week but failed to raise any "specific hardship in their working conditions"); *Howard v. King*, 707 F.2d 215, 219-20 (5th Cir. 1983) ( inmates would be entitled to relief based upon allegations that their 56 hour, 7-day work week engaged in field labor caused perpetual exhaustion and physical breakdown). In this case, plaintiff's claim does not involve extreme work conditions; rather, it involves prison staff directing a prisoner to perform a work task which could aggravate a pre-

### 2. Retaliation claim

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Defendants contend that plaintiff has failed to demonstrate causation, the third element of a retaliation claim, because there is "no evidence that any actions taken by Defendants were taken for the purpose of retaliating against Plaintiff" and that plaintiff has made only a "conclusory statement" that they retaliated against him. Defendants' Brief at p. 8. The court disagrees. In her affidavit, Lawrence stated that part of the decision to remove plaintiff from his position as clerk was a result of verbal requests from other food service staff who were concerned

---

existing medical condition. As discussed, such a claim is viewed as an Eighth Amendment claim for deliberate indifference to a serious medical need. *See Jackson*, 864 F.2d at 1246.

with plaintiff's "work ethic and demeanor as he appeared to be overstepping normal work boundaries that should exist between staff and prisoners who work in the food service area of a prison." Lawrence Aff. at ¶ 7 (docket no. 10-3). The record reflects that plaintiff filed his grievance against Longcore on February 21, 2011, that the grievance was denied at Step III on or about May 2, 2011, and that plaintiff was re-assigned on June 3, 2011. Plaintiff has submitted evidence that he received positive work evaluations from his evaluators and supervisors during the time period of July 31, 2010 through May 30, 2011, with the evaluators assigning him the maximum number of points on the evaluations. *See* Prisoner Program and Work Assignment Evaluations (docket no. 22-3 at pp. 1-16). Plaintiff's positive evaluations contradict Lawrence's statement that food service staff were concerned with plaintiff's work performance. Based on this record, genuine issues of material fact exist with respect to whether plaintiff was re-assigned for poor work performance or for a retaliatory reason.

However, the court concludes that plaintiff has failed to meet the second prong of the retaliation claim, because his work re-assignment did not constitute an adverse action for purposes of a First Amendment retaliation claim. *See* Fed. R. Civ. P. 56(f)(2) (court may grant summary judgment on grounds not raised by a party). The record reflects that plaintiff held the position of clerk during this time period and that he held the other position for only a few months. *See* Evaluation dated September 30, 2011 ("Prisoner Brooks has been back in his clerks assignment for over 2 months. The probation period is over.") (docket no. 22-3 at p. 12). Lawrence also stated that plaintiff "maintained the same pay level in his new assignment as he had in his previous assignment as clerk" and that she gave him the choice of working either a morning or afternoon/evening shift. Lawrence Aff. at ¶ 7 (docket no. 10-3). While plaintiff alleged in the complaint that he received

14

slightly less pay at the new assignment, he has not presented any evidence to support this allegation or rebut Lawrence's statement that his pay level remain unchanged. Viewing this evidence in the light most favorable to plaintiff, the court concludes that he did not suffer an adverse action sufficiently serious to support a First Amendment retaliation claim. "[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). "Although the effect on freedom of speech need not be great in order to be actionable . . . it would trivialize the First Amendment to allow plaintiffs to bring First Amendment retaliation claims for any adverse action no matter how minor." *Id.* (internal quotation marks and brackets omitted). In this case, plaintiff's re-assignment to a different prison job, which was at the same pay level, and which lasted only about two months, was not an adverse action sufficient to support a First Amendment retaliation claim. Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.

### 3. Qualified Immunity

Defendants do not address the issue of qualified immunity in any detail, merely citing the legal standard for qualified immunity and concluding, without reference to the applicable law or facts at issue in this case, that "Defendant's [sic] actions, as described above and in their respective affidavits, were not objectively unreasonable." Defendants' Brief at p. 12. It is insufficient for defendants to cite law for the general proposition that qualified immunity exists and then conclusorily assert that they are entitled to it. *Malec v. Sanford*, 191 F.R.D. 581, 588 (N.D.Ill.2000). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v.*

*Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (a court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments). Accordingly, defendants have failed to adequately raise the issue of qualified immunity.

### 4. State tort claims

Plaintiff has alleged that defendants committed a conglomeration of torts (which include aspects of gross negligence, using falsified information in health records and work assignment reports, and engaging in a conspiracy) which he has characterized as raising "novel and/or complex issue(s) of state law." Comp. at ¶¶ 70-74.[4] Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). "Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2nd Cir. 2003). This is such a case. This court should refrain from creating new state law tort liability for MDOC employees based on plaintiff's attempt to create a new cause of action involving gross negligence, falsification of prison documents and conspiracy. Where a plaintiff's pendent state law claims present novel issues of substantive state law, "[c]omity cautions that this court should not create new state-law liability" and that such issues "should be addressed in the first

---

[4] Defendants' motion for summary judgment does not address all aspects of plaintiff's tort claim. Rather, their motion is limited to whether defendants acted with gross negligence as defined in M.C.L. § 691.1407 (governmental employees have immunity from tort liability as long as their "conduct does not amount to gross negligence").

instance by the Michigan state courts." *Richard v. Oak Tree Group, Inc.*, 614 F. Supp. 2d 814, 825 (W.D. Mich. 2008). Accordingly, the court should decline exercising supplemental jurisdiction over plaintiff's novel state law tort claim.

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment be **GRANTED** as to plaintiff's Eighth Amendment claim against Lawrence, **DENIED** as to plaintiff's Eighth Amendment claim against Longcore, and **GRANTED** as to plaintiff's First Amendment retaliation claim. I further recommend that Defendants' Motion for Summary Judgment on the merits be **DENIED** as to plaintiff's state law claims but that the same claims be **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367.


Dated:  June 15, 2012                                            /s/ Hugh W. Brenneman, Jr.
                                                                     HUGH W. BRENNEMAN, JR.
                                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).